# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

ANTHONY B. PALMER, )
)
              Plaintiff, )
)
v. )
)   Case No. 18-02638-CM-TJJ
PENTAIR, and )
UNITED STEEL WORKERS UNION )
LOCAL 13, )
)
             Defendants. )
)

## MEMORANDUM AND ORDER

Defendants Pentair and United Steel Workers Union Local 13 ("Union") each move to dismiss plaintiff Anthony B. Palmer's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to exhaust administrative remedies and untimeliness under Title VII, and for insufficient allegations under both Title VII and Section 1981. (Docs. 19, 21.) Plaintiff moves, in his opposition memorandum, for leave to amend his complaint if defendants' motions would otherwise be granted. (Doc. 27.)

### I.    FACTUAL BACKGROUND

Plaintiff is an African-American and former employee of defendant Pentair. Plaintiff worked for defendant Pentair from on or about November 28, 2005 until his termination on April 9, 2018. After hiring, defendant Pentair promoted plaintiff to the job of painter, and there are no allegations of discrimination during the first nine years of the employment relationship. From April 2014 through September 2018, plaintiff filed multiple EEOC charges against defendants.

On or about April 2014, plaintiff and another African-American employee were reprimanded for not following performance standards that no Pentair employees followed. Around October 2016,

-1-

plaintiff filed an EEOC charge against defendants alleging race/color discrimination and retaliation based on how plaintiff was treated at work both before and after reporting discriminatory treatment.[1] The EEOC issued a right-to-sue letter for the October 2016 charge, and plaintiff took no legal action.

In June 2017, defendant Pentair disciplined plaintiff for performance and safety issues, including engaging in conduct that plaintiff had done without incident prior to alleging discrimination. Plaintiff's non-African-American coworkers who engaged in the same conduct were not disciplined. Plaintiff reported to management that he was being denied overtime and promotional opportunities, and again reported that he believed he was experiencing discrimination and retaliation by being targeted for discipline. In August 2017, plaintiff reported to management that he believed another African American employee was subjected to discriminatory termination for damaging a product when a non-African-American employee was not terminated under similar circumstances.

Defendant Pentair terminated plaintiff's employment on April 9, 2018. Plaintiff engaged defendant Union for assistance in retaining his job as they had done with other non-African-American employees of defendant Pentair, but defendant Union did not assist him. After termination, plaintiff filed another charge on April 10, 2018 and the EEOC mailed a right-to-sue letter on April 11, 2018.

Plaintiff alleges that both defendants opposed plaintiff's appeal for re-employment and request for employment benefits. Plaintiff filed another charge on September 5, 2018 and received a right-to-sue letter on September 12, 2018.

## II.  LEGAL STANDARDS

On a motion to dismiss under Rule 12(b)(6), the court assumes true all well-pleaded facts in the complaint, disregards all legal conclusions worded as factual allegations, and grants the plaintiff all reasonable inferences from the pleadings. *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir.

---

[1] Plaintiff alleges he filed the charge on or about October 2016. Defendant Pentair has provided a November 2016 charge filed by plaintiff. It is unclear whether plaintiff's October charge is the same as the November charge provided by defendant Pentair.

2012). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)) (quotation marks omitted). "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [the] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).

When a party instead moves for leave to amend, that party must (1) provide a concise statement of the amendment or leave sought; (2) attach the proposed amended pleading; and (3) comply with Local Rules 7.4 through 7.6 governing the form of motions and the amended pleading. *See* D. Kan. Rule 15.1.

### A. Title VII

Title VII makes it unlawful for a covered employer to refuse to hire or otherwise discriminate against any employee on the basis of race or other protected category. *See* 42 U.S.C. § 2000e-2(a)(1). A Title VII plaintiff must meet three procedural conditions before bringing suit: (1) file a charge of discrimination with the EEOC; (2) receive a right-to-sue letter; and (3) file suit within 90 days of receiving the letter. *See Mackley v. TW Telecom Holdings, Inc.*, 296 F.R.D. 655, 661 (D. Kan. 2014). A plaintiff's claims are untimely if not filed within the 90-day window corresponding to his right-to-sue letter, and those untimely claims may not be revived by including them in a newer EEOC charge. *See Brown v. Unified Sch. Dist. No. 501*, 465 F.3d 1184, 1186 (10th Cir. 2006).

A plaintiff's Title VII claims are generally limited by the scope of the administrative investigation that can be reasonably expected to follow his charge of discrimination. *Smith v. Cheyenne Retirement Investors L.P.*, 904 F.3d 1159, 1165–66 (10th Cir. 2018); *see Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007). Although the court construes EEOC charges liberally

when determining whether a plaintiff has exhausted a particular claim, the charge "must contain facts concerning the discriminatory actions underlying each claim." *Furr v. Ridgewood Surgery & Endoscopy Ctr., LLC*, 192 F. Supp. 3d 1230, 1245 (D. Kan. 2016) (citing *Jones*, 502 F.3d at 1186).

### 1. Discrimination

A plaintiff lacking direct evidence of discrimination may rely on indirect evidence under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). A prima facie case of discrimination under Title VII requires the plaintiff show (1) he belongs to a protected class; (2) he suffered adverse employment action; and (3) that action took place in circumstances giving rise to an inference of discrimination. *Moore-Stovall v. Shineski*, 969 F. Supp. 2d 1309, 1321 & n.16 (D. Kan. 2013) (citing *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005)). While the inference of discrimination is often shown through similarly-situated persons who were not subjected to adverse action, a comparator is "just one sufficient means" of meeting a plaintiff's burden. *Sorbo*, 432 F.3d 1169, 1173 (10th Cir. 2005).

### 2. Retaliation

The prima facie case for retaliation is slightly different, requiring a plaintiff to show (1) he engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection between the protected activity and materially adverse action. *Khalik*, 671 F.3d at 1193. Although temporal proximity alone may raise an inference of causation in retaliation claims, more is needed when the employer's alleged retaliation is remote in time from the plaintiff's protected conduct. *See Hysten v. Burlington N. & Santa Fe. Ry. Co.*, 296 F.3d 1177, 1183–84 (10th Cir. 2012); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three-month time period insufficient to infer causation).

### 3. Failure to Re-Hire

The prima facie case for failure to hire requires:

(1) plaintiff belongs to a protected class; (2) plaintiff applied and was qualified for a job for which the employer was seeking applicants; (3) despite being qualified, plaintiff was rejected; and (4) after plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons of [plaintiff's] qualifications.

*Fischer v. Forestwood Co.*, 525 F.3d 972, 982–83 (10th Cir. 2008).

### 4. Hostile Work Environment

Hostile work environment claims require a plaintiff to allege facts showing "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998). "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice'." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (noting that it does not matter if some component acts fall outside of statutory time requirements).

### 5. Duty of Fair Representation

To establish a prima facie case under Title VII against a union for breach of its duty of fair representation, a plaintiff must show (1) the employer violated the collective bargaining agreement with respect to the plaintiff; (2) the union permitted the violation to go unrepaired, thereby breaching the duty of fair representation; and (3) there was some indication that the union's actions were motivated by discriminatory animus. *York v. Am. Tel & Tel. Co.*, 95 F.3d 955–56 (10th Cir. 1996). A union's allegedly discriminatory conduct only violates the duty of fair representation if that discrimination is invidious. *Schwartz v. Bhd. of Maint. of Way Emps.*, 264 F.3d 1181, 1186 (10th Cir. 2001). "Discrimination is invidious if based upon impermissible or immutable classifications such as race or other constitutionally protected categories, or arises from prejudice or animus." *Id.* (citing

*Considine v. Newspaper Agency Corp.*, 43 F.3d 1349, 1359–60 (10th Cir. 1994)). The fact that grievances involving employees of different races were treated differently, unsupported by any suggestion why those grievances were treated differently, does not show invidious discrimination. *See id.*

### B. Section 1981

The *McDonnell Douglas* frameworks for Title VII claims apply equally to claims under Section 1981, though there are slight procedural differences. *Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802–04). Unlike Title VII, Section 1981 does not require an EEOC charge before bringing suit, so Title VII's continuing action theory does not apply. *Thomas v. Denny's Inc.*, 111 F.3d 1506, 1514 (10th Cir. 1997). Title VII's short filing window also does not apply to Section 1981, which instead uses a four-year statute of limitations. *See Payan v. United Parcel Serv.*, 905 F.3d 1162, 1169 (10th Cir. 2018) (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004)).

### C. Retaliatory Discharge in Violation of Public Policy

Kansas follows the employment-at-will doctrine. Under employment-at-will, an employer may discharge an employee for any reason, no reason, or even a wrong reason without giving rise to liability. *See Morriss v. Coleman Co.*, 738 P.2d 841, 846 (Kan. 1987). Kansas recognizes limited exceptions to the doctrine, and one of these exceptions is the tort of retaliatory discharge in violation of state public policy. *Campbell v. Husky Hogs, L.L.C.*, 255 P.3d 1, 3–4 (Kan. 2011).

Kansas recognizes four policy protections whose violation will give rise to employer liability: (1) filing a claim under the Kansas Workers Compensation Act; (2) whistleblowing; (3) filing a claim under the Federal Employers Liability Act (FELA); and (4) exercising a public employee's First Amendment right to free speech on an issue of public concern. *Id.* at 4. A whistleblowing claim under

this tort "must be based on violations of specific and definite rules, regulations, or laws." *Goodman v. Wesley Med. Ctr., L.L.C.*, 78 P.3d 817, 822–23 (Kan. 2003) ("It would be both troublesome and unsettling to the state of the law if we were to allow a retaliatory discharge claim to be based on a personal opinion of wrongdoing."); *see Diebold v. Sprint/United Mgmt. Co.*, No. 01-2504-KHV, 2002 WL 1071923, at *3 (D. Kan. Apr. 29, 2002) (collecting cases where plaintiffs clearly identified allegedly unlawful action giving rise to whistleblowing).

### III. DISCUSSION

To the extent plaintiff frames his opposition memorandum's informal request for leave to amend as being a motion, plaintiff has not submitted a proper motion for leave to amend, and plaintiff has neither attached his proposed amended filing nor indicated what facts he intends to allege in his amendment as required by Local Rule 15.1. Because this is not a proper motion for leave to amend, the court denies plaintiff's request. *See Pennella v. Acumen Assessments*, No. 17-2327-DDC, 2017 WL 4882660, at *6 (D. Kan. Oct. 30, 2017) (denying motion to amend for failure to comply with Local Rule 15.1 and futility); *Monopoly Acquisitions, LLC v. T.E.N. Invs., Inc.*, No. 07-2161-CM, 2007 WL 2726018, at *4 (D. Kan. Sept. 17, 2007) (denying informal request for leave to amend where not timely-filed or properly-filed).

The court will address plaintiff's multiple unexhausted or untimely claims under Title VII before turning to the remaining allegations against both defendants.

#### A. Title VII

##### 1. Untimeliness

Plaintiff's many claims against both defendants arise after filing at least three different EEOC charges between April 2014 and September 2018. The right-to-sue letters on these three charges were issued in November 2016, April 2018, and on September 12, 2018. Plaintiff commenced this suit on

November 26, 2018. Accordingly, all Title VII claims based on charges other than plaintiff's September charge are untimely. Plaintiff's November 2016 charge alleges race discrimination and improper disclosure of plaintiff's records by defendant Union. The April 2018 charge includes plaintiff's allegations of discriminatory and retaliatory discipline and termination on the basis of race/color. The September 2018 charge refers to the April 2018 charge, and adds both an alleged failure to re-hire and the denial of overtime assignment opportunities "[t]hroughout the tenure of [plaintiff's] employment with [Pentair]." (Doc. 16-1, at 3.)

Because plaintiff's April 2018 charge included his discriminatory and retaliatory discipline and termination allegations, plaintiff needed to file all claims corresponding to those allegations within 90 days of the April 11, 2018 right-to-sue-letter. Plantiff filed this case over seven months after the date of the right-to-sue letter, so his discriminatory and retaliatory discipline and termination claims are untimely under Title VII. Plaintiff's reference to the April 2018 charge in his September 2018 charge does not revive the untimely claims. *See Brown*, 465 F.3d at 1186. As a result, plaintiff's only remaining claims under Title VII are (1) discriminatory or retaliatory failure to re-hire; (2) hostile work environment; (3) discrimination or retaliation relating to overtime and promotional opportunities; and (4) violation of the duty of fair representation by defendant Union.

### 2. Failure to Exhaust

Paragraph 48 of the complaint includes an allegation that defendant Pentair "subjected [plaintiff] to *harassment* and discrimination including terminating his employment [because of race]." (Doc. 16, at 8 (emphasis added).) To the extent that plaintiff attempts to bring a claim alleging hostile work environment, plaintiff has not shown that he has exhausted his administrative remedies without also causing his claim to become untimely. To exhaust the harassment claim, the September charge "must contain facts concerning the discriminatory actions underlying [a harassment] claim." *See Furr*,

-8-

192 F. Supp. 3d at 1245.  The September charge states (1) plaintiff was denied overtime opportunities; (2) defendant Pentair did not rotate plaintiff to other departments "after [plaintiff] was bumped down" to the painting department; (3) plaintiff was terminated for not wearing proper personal protective equipment; (4) plaintiff filed the April 2018 EEOC charge; and (5) defendant Pentair has not rehired plaintiff.  (Doc. 16-1, at 3–4.)

When read liberally as required, the September charge contains plaintiff's overtime and rehiring allegations, as well as some allegations as to supervisory actions by defendant Pentair.  However, plaintiff has offered no well-pleaded facts regarding his working environment or alleged workplace harassment.  Accordingly, plaintiff has not shown that a claim for harassment or hostile work environment would have been within the scope of the EEOC investigation of the September charge.  Because plaintiff has not shown that his harassment or hostile work environment claim would have been within the scope of the administrative investigation, plaintiff has failed to administratively exhaust his harassment or hostile work environment claims, and they cannot be brought in this suit.

While many of plaintiff's claims may remain under Section 1981, only plaintiff's overtime, rehiring, and fair representation allegations remain under Title VII.

### 3. 12(b)(6)

The court will resolve plaintiff's duty of fair representation claim against defendant Union before addressing plaintiff's overtime and rehiring allegations under the complaint's alternative theories of discrimination and retaliation.

#### i. Duty of Fair Representation

Defendant Union moves to dismiss under Rule 12(b)(6) alleging failure of several critical elements, noting that plaintiff has made no allegations as to how defendant Union is liable for discrimination.  Because defendant Union makes no argument on the affirmative defense of

administrative exhaustion, the court has not addressed administrative exhaustion as to plaintiff's claim for violation of the duty of fair representation.

The complaint's specific allegations against the Union are sparse, and plaintiff refers to plural "Defendants" for conclusory liability in multiple places after alleging facts only against defendant Pentair. Plaintiff's only factual allegation that is unique to defendant Union is found in Paragraph 37 of the complaint, which states: "[Plaintiff] engaged the Union for help but they refused to assist [him] in retaining his job as they had done with non-African American employees of Pentair who had been terminated for alleged misconduct." (Doc. 16, at 6.) Paragraph 44 further alleges: "Defendants then opposed Plaintiff's appeal for re-employment and request for employment benefits as a further act of retaliation." (*Id.* at 7.) Both paragraphs are part of plaintiff's Count I claim for retaliation under Title VII and Section 1981 against both defendants. Plaintiff neither mentions nor provides additional facts regarding the duty of fair representation; the violation of a collective bargaining agreement; the failure of the union to repair that violation; or discriminatory animus on the part of the union.

While plaintiff has alleged that employees of different races were assisted by defendant Union when he was not, he has neither alleged that those employees were similarly situated, nor any other facts which could plausibly support an indication of discriminatory animus. This general allegation of discrimination, without some supporting detail, does not support that the Union's decision departed from the broad discretion allowed within the duty of fair representation.

Because plaintiff has not alleged any facts plausibly supporting an indication of discriminatory animus by defendant Union, the court dismisses plaintiff's claim for a violation of the duty of fair representation. To the extent that this claim is also alleged under Section 1981, the court similarly dismisses for lack of any well-pleaded facts in support of discriminatory intent by defendant Union.

### ii. Overtime and Promotional Opportunities

Plaintiff alleges one fact on this point in his September EEOC charge, and one fact in his complaint. Paragraph 33 of the complaint states "[plaintiff] also repeatedly reported that he was being denied overtime and other promotional opportunities for increased pay and received no justification for such treatment." (*Id.* at 6.) Even after incorporating this allegation into plaintiff's claims for retaliation and discrimination, there are no additional allegations which frame defendants' alleged conduct either as taking place in circumstances giving rise to an inference of discrimination, or as linked to any previous protected conduct by plaintiff. Similar to plaintiff's allegations against defendant Union, while plaintiff need not make out a prima facie case on either ground, plaintiff must provide at least some detail beyond a recitation of the elements of the cause of action.

Because plaintiff has not alleged any facts in support of an inference of either discrimination or retaliation, the court dismisses plaintiff's Title VII claims on overtime and promotional opportunities.

### iii. Failure to Re-hire and Opposition to Benefits

Reading Paragraph 44's "oppos[ition] [to] Plaintiff's appeal for re-employment and request for employment benefits" as a potential failure to re-hire under Count I's retaliation theory, the court notes that this claim could be alleged as incorporated under discrimination or retaliation. (*Id.* at 7.) Under a discrimination theory: plaintiff (1) belongs to a protected class; but it is unclear if (2) plaintiff applied for a job; or (3) plaintiff was rejected from that job; or (4) after that rejection, the employer continued to seek similarly-qualified applicants. While plaintiff alleges some discriminatory assistance by defendant Union, and some discriminatory discipline by defendant Pentair, there are no supporting facts alleged which suggest discrimination in hiring. Defendants may have opposed some form of appeal for re-employment, but plaintiff does not clearly allege that he applied for an available position for which he was qualified, nor that he was rejected for that position, nor that his employer continued

to seek candidates of similar qualifications.  *See Fischer*, 525 F.3d at 982–83.  Although plaintiff's EEOC charge states that he is "aware of another employee, white, who was terminated for cause and was later reinstated," there is neither a suggestion that this employee was similarly-situated, nor any additional facts showing the timing or circumstances of this other employee's reinstatement.  (Doc. 16-1, at 4.)  Plaintiff's discrimination theory is based on: (1) he is a member of a protected class; (2) who was not rehired; and (3) at an unspecified time for an unspecified position, a white employee was rehired.  Without some additional detail, these facts do not transform plaintiff's short allegation of opposition into a plausible claim for discrimination in re-hiring or opposition of benefits.[2]

Briefly considering the claim in the retaliation context, the allegations are similarly lacking in any detail or grounds which remain available after plaintiff's many untimely or conclusory allegations are disregarded.  The complaint refers to reporting discrimination and safety issues at work before stating in paragraph 43 that his "protected activity . . . was a motivating factor in Defendant's retaliation."  (Doc. 16, at 7.)  Neither the complaint's retaliation claim nor plaintiff's September charge allege that defendants retaliated due to plaintiff's April 2018 charge, and the complaint does not mention the April 2018 charge.  The remaining allegations recite the elements of "adverse employment action" and "causal connection," but provide no facts as to causation or the relevant timeframe between plaintiff's protected action and defendants' opposition which could support an inference of causation.  (*Id.*)  Similar to plaintiff's discrimination theory, without any supporting facts plaintiff has not shown a link between his protected activity at an unspecified pre-termination date and defendants' alleged recent opposition to his re-employment and benefits.

---

[2] While plaintiff alleges that both defendants "opposed" his request for employment benefits, the complaint contains no federal or state law claim for an improper denial of benefits and does not allege defendants improperly denied—rather than opposed a request for—benefits to plaintiff.  It is unclear that these "benefits" are not those inherent in continued employment, as in Paragraph 4's reference to "benefits which [plaintiff] would have earned [but-for his termination]." (Doc. 16, at 2.)

Because plaintiff has not alleged a plausible claim for either discriminatory or retaliatory refusal to re-hire under Title VII, the court dismisses plaintiff's re-hiring claims.

### B. Section 1981

Because the indirect evidence claims for discrimination and retaliation under Section 1981 match their Title VII counterparts, plaintiff's claims are generally not plausible for many of the same reasons. However, the court addresses plaintiff's Section 1981 claims to resolve any uncertainty which could not be considered under Title VII due to both untimeliness and a failure to exhaust administrative remedies.

#### 1. Discrimination

Plaintiff's discrimination allegations under Section 1981 include those already presented under Title VII and add (1) general discrimination and retaliation based on plaintiff's treatment at work; (2) disciplinary actions for previously-undisciplined conduct, where non-African-American coworkers were allegedly not disciplined; and (3) suspension and termination. Plaintiff's allegation that he and another African-American employee were singled out for performance standards in April 2014 is time-barred as beyond four years from the filing of this case.

On his claims under Section 1981, plaintiff must allege some facts that plausibly give rise to an inference of racial discrimination. Plaintiff makes many conclusory allegations as to defendants' discriminatory intent and policies on this claim, including his general allegations of discrimination and retaliation at work, but the court looks past plaintiff's recitation of elements to determine what well-pleaded facts remain. *See Khalik*, 671 F.3d at 1193–94. Although plaintiff alleges that non-African-American coworkers were not subjected to discipline, there is no allegation that any of these coworkers were similarly-situated to plaintiff to support an inference of discrimination. While this inference can be shown by other circumstances than an alleged comparator, "where, as here, comparison to others

similarly situated is 'the method chosen by [the plaintiff]' to raise an inference of discrimination, the claim is properly analyzed in those terms." *Sorbo*, 432 F.3d at 1173–74 (quoting *Jones v. Denver Post Corp.*, 203 F.3d at 753) (alterations in original). Similarly, while plaintiff alleges that his suspension and termination were discriminatory, he makes no allegation of either (1) a similarly-situated employee or other circumstances giving rise to an inference of discrimination for his suspension claim, or (2) that his position remained open to raise that same inference in his termination claim. *See Hysten*, 296 F.3d at 1181–82 (noting the different showings required between suspension and termination claims).

Because plaintiff makes no allegations necessary to raise a plausible inference of discrimination, the court dismisses plaintiff's Section 1981 discrimination claims.

### 2. Retaliation

Plaintiff's Count I covers both his claims under Title VII and his claims under Section 1981. Count I's only allegations as to causation are in Paragraph 43, stating "[p]laintiff's protected activity in opposing discrimination was a motivating factor in [d]efendant's retaliation"; and in Paragraph 46, stating "[t]here is a direct causal connection between [plaintiff's] protected activity and the adverse employment action." (Doc. 16, at 7.) There are no additional details given for causation, and no non-conclusory allegations to allow the court to apply an inference other than a time-based presumption of discrimination. Accordingly, the court looks to plaintiff's protected acts alleged in the complaint, compared to the date of Count I's alleged retaliation.

Plaintiff's latest protected act referenced in Count I is an August 2017 report to management about alleged discrimination in termination of another African-American employee. Plaintiff's termination occurred on April 9, 2018, and any alleged opposition to re-hiring or benefits followed after that date. The minimum distance between plaintiff's protected conduct and both his termination

and defendants' alleged retaliation exceeds seven months, more than twice the amount the Tenth Circuit has considered insufficient for an inference of causation. *See Hysten*, 296 F.3d at 1183–84.

Because the time between plaintiff's protected conduct and alleged retaliation is insufficient for an inference of causation, and plaintiff has alleged no other facts supporting causation, the court dismisses plaintiff's Section 1981 retaliation claims.

### C. Retaliatory Discharge in Violation of Public Policy

Plaintiff's claim for retaliatory discharge in violation of public policy is based on alleged whistleblowing in "reporting safety issues and other workplace concerns to corporate management and outside the facility." (Doc. 16, at 8.) This claim requires plaintiff to clearly allege a violation of specific and definite rules, regulations, or laws beyond a mere feeling of wrongdoing. *See Goodman*, 78 P.3d at 822–23; *Diebold*, 2002 WL 1071923, at *3.

Plaintiff cites two provisions of Kansas law, but provides no additional facts in his allegations which would explain how defendants violated any law relating to "safety issues and other workplace concerns." The first of plaintiff's cited provisions is Kan. Stat. Ann. § 44-636, which provides the secretary of labor the power to inspect businesses for violations of occupational health and safety regulations, and further provides notice, hearing, and penalty provisions when a violation is found. *See* Kan. Stat. Ann. § 44-636. The second provision is Kansas's general bar against retaliatory discharge based on an employee's involvement in protected conduct as a witness or litigant in an employment investigation. *Id.* § 44-615. Plaintiff neither identifies any conduct by defendants that violated either of these statutes, nor which conduct by defendants he actually reported and why. Such general allegations of workplace safety violations, absent any specific violation by defendants giving rise to the report, are not sufficient to show a plausible claim for retaliation.

Because plaintiff has not clearly alleged a violation of specific and definite rules, regulations, or laws by defendants, the court dismisses plaintiff's state law claim for retaliatory discharge in violation of public policy.

For the foregoing reasons, because plaintiff's claims for retaliation under Title VII and Section 1981 are either untimely, unavailable for failure to exhaust administrative remedies, or do not allege circumstances supporting an inference of discrimination, the court must dismiss plaintiff's Count I. Because plaintiff's claims for discrimination under Title VII are similarly either untimely, unavailable, or do not allege circumstances supporting an inference of discrimination, the court must dismiss plaintiff's Count II. Because plaintiff's Kansas law claim for retaliatory discharge in violation of public policy does not clearly allege a violation of a specific and definite rule, regulation, or law by defendants, the court must dismiss plaintiff's Count III. Finally, because plaintiff's claims for discrimination under Section 1981 do not sufficiently allege circumstances giving rise to an inference of discrimination, the court must dismiss plaintiff's Count IV.

**IT IS THEREFORE ORDERED** that plaintiff's request for leave to amend (Doc. 27) is denied as not properly brought on motion.

**IT IS FURTHER ORDERED** that defendant Union's motion to dismiss (Doc. 19) is granted.

**IT IS FURTHER ORDERED** that defendant Pentair's motion to dismiss (Doc. 21) is granted.

The Clerk of Court is directed to enter judgment in favor of defendants against plaintiff.

The case is closed.

Dated this 18th day of July, 2019, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**